**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ARTHUR OJO, individually and on behalf of all others similarly situated, | : | **Civil Action No. 26-04011 (SRC)** |
| Plaintiff, | : | **OPINION AND ORDER** |
| v. | : | |
| TABB, INC., | : | |
| Defendant. | : | |

**CHESLER**, District Judge

This matter comes before the Court on Defendant TABB, INC.'s ("Defendant") motion to dismiss Plaintiff Arthur Ojo's ("Plaintiff") Amended Complaint (Dkt. No. 5, "AC") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) (Dkt. No. 6, "Mot."). Plaintiff field a brief in opposition to the Motion. (Dkt. No. 15, "Opp."). Defendant filed a brief in reply. (Dkt. No. 20, "Reply"). The Court heard oral argument on August 12th, 2026. For the following reasons, Defendant's Motion is **GRANTED**.

## I. FACTUAL BACKGROUND

The Complaint alleges the following relevant facts. Defendant is a New Jersey company that provides pre-employment background checks to its employer-clients. (AC ¶ 2). As part of its work, Defendant requires its clients' prospective employees to provide Defendant with private information, including their "names, contact information, dates of birth, Social Security Numbers, Driver's license numbers, as well as financial information for direct deposit, and other information such as high school diplomas." (Id. ¶ 3, "Private Information"). Plaintiff is a former employee of

one of Defendant's clients and gave his Private Information to Defendant as part of his employment process. (Id. at 19).

On or about August 14, 2024, Defendant learned that "a database where [it] stored data related to background checks we conducted on [their] clients' behalf was publicly discoverable to people who were able to identify where it was located." (Id. ¶ 36; AC Ex. A, the "Misconfiguration Notice") (the "Misconfiguration"). In February of 2026, Defendant informed affected individuals about the Misconfiguration and stated that it had since "remediated the miscalibration and secured the database." (Id. ¶ 39; Misconfiguration Notice). Defendant also stated that it "could not rule out that the files in the database had been accessed during the time they were publicly available" and that on October 25, 2024, it learned that the affected files contained certain private information. (Misconfiguration Notice). Finally, Defendant noted that it did not have any evidence of information being used for unauthorized purposes but still offered free credit monitoring services for 12 months. (AC ¶ 42; Misconfiguration Notice).[1]

Plaintiff alleges that since the Misconfiguration, he has experienced a "dramatic increase in spam communication," (Id. ¶ 163), that he has suffered "fear, anxiety, and stress," (Id. ¶ 165), and that he has spent time and effort to "mitigate the impact of the [Misconfiguration], including researching and verifying the legitimacy of the [Misconfiguration], and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud." (Id. ¶ 162). Plaintiff also asserts that he has been informed "via Apple on his iPhone and via email notifications" that his Private Information is "accessible on the Dark Web." (Id. ¶ 160).

## II. DISCUSSION

[1] As is discussed below, Plaintiff's pleading is contradictory on what caused the security incident here. See infra at 7 n.3.

**A. Legal Standard**[2]

Defendant asks this Court to dismiss the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1), because Plaintiff lacks constitutional standing to bring this action and, as a result, this Court lacks subject matter jurisdiction to hear this case.

Under Rule 12(b)(1), a defendant may move at any time to dismiss a complaint for lack of subject matter jurisdiction on either facial or factual grounds. Gould Electronics Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). Whereas a factual attack challenges jurisdiction by disputing facts alleged "through the filing of an answer or otherwise presenting competing facts," Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016) (quotations omitted), a facial challenge asserts that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." Iwanowa v. Ford Motor Co., 67 F. Supp. 2d 424, 438 (D.N.J. 1999). Accordingly, in assessing a facial challenge, as here, a court "must only consider the allegations of the complaint and documents attached thereto, in the light most favorable to the plaintiff." Gould Electronics Inc., 220 F.3d at 176. In other words, on a facial challenge, "a district court applies the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6) . . . ." Const. Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014). When considering constitutional standing at the motion to dismiss stage, a court will not assume the truth of general averments and conclusory allegations. Coubaly v. Cargill Incorporated, 144 F.4th 343 (D.C. Cir. 2025).

[2] Because the Court finds that Plaintiff lacks Article III standing to bring this action, it does not conduct an analysis under Rule 12(b)(6) and need not review the legal standard applicable to 12(b)(6) motions. Beyer v. Kenvue Brands LLC, 2026 WL 1396498, at *6 (D.N.J. May 19, 2026) ("Having found that Plaintiffs lack Article III standing, this Court is without subject matter jurisdiction to address Defendant's remaining arguments for dismissal.").

Article III of the Constitution limits the jurisdiction of federal courts to actual "cases or controversies." U.S. Const. art. III, § 2. To present an actual case or controversy which is appropriate for resolution by a federal court, a plaintiff must establish that he has standing to bring the lawsuit at issue. Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."). "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1) because standing is a jurisdictional matter." Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007).

**B. Analysis**

To establish Article III standing, a plaintiff must show: "(1) an injury-in-fact . . . that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the complained-of conduct; and (3) that it is likely the injury will be redressed by a favorable decision." Winer Family Trust v. Queen, 503 F.3d 319, 325 (3d Cir. 2007) (citations omitted). The injury-in-fact requirement is the "first and foremost" consideration in a standing inquiry. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998). "Allegations of possible future injury" are not sufficient to meet the "actual or imminent" standard required to show an injury-in-fact, and even an "objectively reasonable likelihood" of harm will not suffice. Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409-410 (2013) (quotations omitted). Instead, the injury at issue must be "certainly impending" to satisfy the requirements of Article III. Id. In sum, "a plaintiff need not wait until he or she has actually sustained the feared harm in order to seek judicial redress but can file suit when the risk of harm becomes *imminent*." Clemens v. ExecuPharm Inc., 48 F.4th 146, 152 (3d Cir. 2022) (emphasis added).

### 1. Imminent Risk of Identity Theft or Fraud

Cases involving the exposure of personal information present a particular standing problem because the core harm often flows from the disclosure of data, which "may cause future harm as opposed to currently felt harm." Clemens, 48 F.4th at 152. That posture puts imminence squarely at issue because a court must determine whether an increased risk of identity theft or fraud is sufficiently imminent to confer standing.

Two recent Third Circuit decisions, Reilly and Clemens, frame that analysis, and courts in this district have applied them as "helpful guideposts to the standing inquiry for data breach actions." Lips v. Accu Reference Med. Lab, LLC, 2026 WL 1815454, at *4 (D.N.J. June 24, 2026) (collecting cases).

First, in Reilly v. Ceridian Corp., the Third Circuit found that a plaintiff lacked standing to sue where an “unknown hacker infiltrated” the defendant’s system and “potentially gained access to personal and financial information,” but it was not known “whether the hacker read, copied, or understood the data.” 664 F.3d 38, 40. There, upon learning of the breach, the defendant notified potential identity theft victims that some of their personal information, including social security numbers and bank account information, may have been accessed and offered affected individuals a free year of credit monitoring services. Id. Ultimately, the Reilly court determined that the plaintiff failed to show a sufficiently imminent injury because “there [was] no evidence that the intrusion was intentional or malicious . . . [the plaintiff] alleged no misuse, and therefore no injury . . . no identifiable taking occurred [and] all that [was] known [was] that a firewall was penetrated.” Id. at 44.

A decade later, the Clemens court reached the opposite result, finding the plaintiff had properly pled standing. The Third Circuit clarified that Reilly "did not create a bright line rule

precluding standing based on the alleged risk of identity theft or fraud," 48 F.4th at 153, and held that the plaintiff's risk was "far more imminent" than in Reilly. Id. at 156. There, a known hacking group "accessed [the plaintiff]'s sensitive information" through a sophisticated phishing attack, encrypted it, held it for ransom, and ultimately "published [the defendant]'s data on the Dark Web." Id. at 157. In conducting its analysis, the Third Circuit set out three non-exhaustive factors for courts to consider in "determining whether an injury is imminent . . . in the data breach context[:]" (1) whether the breach was intentional, (2) whether the data was misused, and (3) whether the type of information exposed heightens the risk of identity theft. Id. at 153-54.

Here, as in those cases, Plaintiff alleges that the Misconfiguration increased his and the putative class members' risk of identity theft and fraud. (See AC ¶¶ 99-138). Accordingly, the Court employs the Clemens factors to determine if this risk is sufficiently imminent to confer Article III standing.

**a. Intentionality**

First, Plaintiff has not plausibly alleged that the Misconfiguration was the result of an intrusion, let alone an intentional attack targeting the underlying data. (See Opp. at 8 (noting that courts look to whether "the data was intentionally targeted" not just whether the defendant's systems, in general, were targeted)).

The only concrete allegation regarding the cause of the incident here is contained in the Misconfiguration Notice issued by Defendant. There, as Plaintiff quotes in his Amended Complaint, Defendant informed potentially affected individuals that:

> On August 14, 2024, we were alerted that a database where we stored data related to background checks we conducted on our clients' behalf was publicly discoverable to people who were able to identify where it was located. We are committed to maintaining the privacy and security of the information entrusted to us and have remediated the miscalibration and secured the database.

(AC ¶ 36 (quoting the Misconfiguration Notice)). To establish an intentional intrusion, Plaintiff points to his allegations in paragraphs 4, 11, 35, and 43 of the Amended Complaint. (Opp. at 8 nn.26-27). Paragraph 4 merely repeats the language of the Misconfiguration Notice and provides no basis whatsoever for finding an intentional intrusion, nor any intrusion at all. The other paragraphs allege as follows: "the hackers were able to infiltrate Defendant's information systems for an extended period of time and perform malicious activity . . . ." (AC ¶¶ 11, 43) and "Defendant discovered that its information systems were hacked and infiltrated by cybercriminals. . . ." (Id. ¶ 35). But these allegations are merely conclusory and Plaintiff offers no additional factual allegations to support these naked assertions.[3] See Aponte v. Ne. Radiology, P.C., 2022 WL 1556043, at *4 (S.D.N.Y. May 16, 2022) (finding that the plaintiff's allegations that unauthorized users who accessed the information at issue were "hackers" was merely conclusory and not sufficient "to support the notion that the breach was a targeted attempt[]" to steal data)

Even if the Court were, to some extent, to credit Plaintiff's conclusory allegations that the Misconfiguration was initiated by an intrusion by unknown and unidentified individuals, the facts of this case are much closer to those of Reilly than to those of Clemens.

More like Reilly, and unlike Clemens, Plaintiff provides essentially no details as to whether a hack in fact occurred or whether any of his Private Information was ever accessed. Applying

[3] The Court also notes that Plaintiff's pleading itself is contradictory regarding what caused the incident here. The Amended Complaint states that, "[o]n or about August 14, 2024, Defendant discovered that its information systems were hacked and infiltrated by cybercriminals . . . ." (AC ¶ 35). But, Plaintiff supports this assertion with language from the Misconfiguration Notice quoted above. (Id. ¶ 36). In other words, Plaintiff appears to concede that the data exposure was the result of a "miscalibration" of Defendant's database (not a hack), while also asserting that it was the result of Defendant's "information systems [being] hacked and infiltrated by cybercriminals." Both cannot be true, and here, the Misconfiguration Notice, which makes clear that the incident was not the result of a targeted cyberattack, controls. See ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 n.8 (3d. Cir. 1994) ("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control.").

Reilly, other courts in this district have found that plaintiffs alleging that unknown hackers possibly gained access to sensitive information lacked standing. See, e.g., Alonzo v. Refresco Beverages US, Inc., 2024 WL 4349592, at * 4 (D.N.J. 2024) (finding that the intentionality factor weighed against plaintiff where plaintiff did not "set forth any specific allegations about who was behind the . . . hack."). In other words, even if the Court were to believe there was some sort of intrusion, here, as in Reilly, there has been no factual allegation that it "was [an] intentional or malicious" attempt to take the data at issue, 664 F.3d at 44, so this factor cuts against standing.

**b. Misuse**

Plaintiff argues that the following allegations should compel the Court to find misuse and, accordingly, standing:

> Following the Data Breach, Plaintiff has been informed that his Private Information is now accessible on the Dark Web, via Apple on his iPhone and via email notifications.
>
> Plaintiff has also called TABB at the phone number it provided "For More Information" regarding the Data Breach, *see* Exhibit A, and was informed that his Private Information was indeed compromised in the Data Breach.
>
> Plaintiff has suffered actual injury from the dramatic increase in spam communication, suggesting that his Private Information has been stolen and is now in the hands of cybercriminals
>
> Plaintiff suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to: (i) misuse of Private Information as evidenced by the spam calls and communications . . .

(AC ¶¶ 160-61, 163-64; see Opp. 8-9). Plaintiff's allegations regarding the Dark Web and spam communications suffer from the same fundamental problem: a failure to establish a causal

relationship between these complaints and the underlying Misconfiguration.[4] The mere allegations that Plaintiff's information has appeared on the Dark Web and that Plaintiff has received more spam communications in recent years, do not, alone, show that the information which was possibly taken has been misused by a third party thereby causing these outcomes. See In re Samsung Data Sec. Breach Litig., 761 F. Supp. 3d 781, 798 (D.N.J. 2025) (no misuse where plaintiffs alleged they had been notified their personal information was on the Dark Web but could not tie that exposure to the specific data breach at issue); Mantagas v. SHI Int'l Corp., 2023 WL 5623948, at *6 (D.N.J. Aug. 31, 2023) (no misuse where the plaintiff had alleged an "increase in the number of spam phone calls, emails and texts . . ." because, in part, "courts in this circuit have consistently held that injuries in the form of spam calls. . . are not enough to establish an injury-in-fact.") (collecting cases).[5]

Plaintiff's allegation that Defendant informed him over the phone that his information had been "compromised" in the Misconfiguration similarly fails to create an inference of misuse. (AC ¶ 161). It is not at all clear from the Amended Complaint what Plaintiff means by "compromised." Read in context, it appears to mean that Plaintiff's information may have been publicly accessible before Defendant remedied the security lapse here. Plaintiff's counsel effectively conceded this understanding of that phone call at oral argument.[6] Further, Plaintiff pleads no other allegations

---

[4] For essentially this same reason, Plaintiff's theory of standing based on an increase in spam communications would likely fail at the second step of a standing analysis, which requires a court to determine whether an injury in fact is traceable to the defendant's conduct.

[5] Tellingly, Plaintiff's pleading contains no specifics about what Apple actually told him.

[6] See the following exchange:

The Court: It does not say and you're not telling me that he was told that someone, in fact, did locate the information and did, in fact discover his private information. Correct?

[Counsel]: That's correct, Judge. That is not the meaning of [the allegation in paragraph 161]

which tend to show that "compromised" here means "taken" or "obtained," let alone actually misused.

Additionally, Plaintiff generally alleges on "information and belief" that his and other class members' Private Information was "exfiltrat[ed] by cybercriminals," (AC ¶ 5), and that "on information and belief" cybercriminals were able to access Plaintiff's information "which is now being used or will imminently be used for fraudulent purposes and/or has been sold for such purposes and posted on the Dark Web for sale, causing widespread injury and damages." (AC ¶ 95). But Plaintiff fails to support this pleading with an actual basis for such information and belief. Accordingly, the Court does not credit these statements which summarily assert Plaintiff's Private Information has been "exfiltrated" and is currently or is about to be misused by bad actors. See Guzman v. City of Newark, 2022 WL 1044957, at *7 (D.N.J. Apr. 7, 2022) ("When a plaintiff makes allegations based on information and belief, he must explain the basis for the information and belief.").

In short, Plaintiff has not pled enough facts to support a reasonable inference that his information was taken from Defendant's database by a third-party and then misused. See Newtek Small Bus. Fin., LLC v. Texas First Cap., Inc., 644 F. Supp. 3d 113, 119 (E.D. Pa. 2022) (stating that on a motion to dismiss, "the court need not accept unsupported conclusions or unwarranted inferences") (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

**c. Nature of the Information**

The nature of the information at the center of this dispute cuts in favor of Plaintiff. Plaintiff alleges that the exposed date included "names, contact information, dates of birth, Social Security

---

(Hearing Transcript at 13).

Numbers, Driver's license numbers, as well as financial information for direct deposit, and other information . . . ." (AC ¶ 3). This data, if taken, would likely be sufficient to allow a bad actor to cause serious harm to Plaintiff and the rest of the putative class members, which would be substantial enough to support standing. See Adkins v. Everest Glob. Servs., Inc., 2024 WL 3887127, at *5 (D.N.J. Aug. 21, 2024) (standing established where the plaintiff's "name and S[ocial] S[ecurity] N[umber] were accessed in the Data Breach") (citing Clemens, 48 F.4th at 154). But weighed against the other two factors, the nature of the information here, alone, does not create the sort of imminent harm required to confer standing. See Reilly, 664 F.3d at 40 (no standing even where the information accessed included affected individuals' "first name, last name, social security number and, in several cases, birth date and/or the bank account that is used for direct deposit); Alonzo, 2024 WL 4349592, at * 7 (no standing where nature of the information factor favored the plaintiff, because "on balance, [the plaintiff]'s allegations [were] more consistent with those in Reilly than in Clemens").

**2. Other Alleged Harms**

In an attempt to avoid the imminence analysis, plaintiffs, as here, often plead additional already-felt harms, such as the cost of mitigating the impact of identity theft, an increase in spam communications, the diminution in value of private information, the lost benefit of the bargain, invasion of privacy, the theft of private information, and emotional distress. (See AC ¶¶ 164-167; Opp. at 10-15). Despite these alleged injuries, courts typically consider these secondary to the core harm of the increased risk of identity theft, and these the strength of these harms typically rise and fall with that increased risk. Put simply, if the risk of identity theft and fraud is sufficiently certain, then these additional harms help bolster standing by satisfying the injury-in-fact's concreteness requirement; but if it is not, then these additional harms are not enough, on their own,

to confer standing. See Clemens, 48 F.4th at 155 (stating that where a plaintiff has shown a substantial risk of identity theft or fraud to satisfy the imminence requirement of standing, a plaintiff can then satisfy the "concreteness" requirement of sanding "as long as he alleges that the exposure to that substantial risk caused additional, currently felt concrete harms" such as "emotional distress" or money spent on mitigation measures); Reilly 664 F.3d at 46 (3d Cir. 2011) (holding that plaintiffs' "alleged time and money expenditures to monitor their financial information d[id] not establish standing, because costs incurred to watch for a speculative chain of future events based on hypothetical future criminal acts [were] no more 'actual' injuries than the alleged 'increased risk of injury' which form[ed] the basis for Appellants' claims"); In re Samsung Data Sec. Breach Litig., 761 F. Supp. 3d 781, 798 (D.N.J. 2025) ("Because there is no imminent risk of identity theft or fraud, Plaintiffs' other theories of injury—incurred costs associated with prophylactic measures, diminished value of [private information], lost benefit of the bargain, and emotional distress—alone cannot maintain a cause of action.").

As Plaintiff's additional alleged injuries—possible mitigation costs, diminished value of private information, lost benefit of the bargain, theft of private information, invasion of privacy, and emotional distress, increased spam communications—are merely derivative of the alleged imminent risk of identity theft, they fail as well. Put another way, Defendant is correct in stating that "Plaintiff's remaining allegations cannot bootstrap Article III standing." (Reply at 4).

## III. CONCLUSION

Because Plaintiff has failed to allege an injury-in-fact sufficient to establish standing, the Court grants Defendant's motion to dismiss without prejudice. Thorne v. Pep Boys Manny Moe & Jack Inc., 980 F.3d 879, 896 (3d Cir. 2020) ("Dismissal for lack of standing reflects a lack of

jurisdiction, so dismissal of [an] amended complaint [for lack of standing] should [be] without prejudice.”).

* * *

For these reasons,

**IT IS** on this 13th day of August, 2026

**ORDERED** that Defendant’s Motion to Dismiss (Dkt. No. 6) is **GRANTED**; and

**ORDERED** that the claims against Defendant are **DISMISSED WITHOUT PREJUDICE**; and it is further

**ORDERED** that Plaintiff is **GRANTED** leave to file an amended complaint within 30 days of the issuance of this Order.

s/Stanley R. Chesler

Date: August 13th, 2026